AO106 (Rev. 12/03)   Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

| MIDDLE | DISTRICT OF | ALABAMA |
|---|---|---|

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

The residence and curtilage located at 1920
Briarwood Street, Prattville, AL 36066

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

Case Number: 2:14/mj202-TFM

I, Anthony B. Williams _____ being duly sworn depose and say:

I am a(n) Special Agent with the Department of Homeland Security _____ and have reason to believe
                          Official Title

that ☐ on the person of or   ☑ on the property or premises known as (name, description and/or location)

the residence and curtilage located at 1920 Briarwood Street, Prattville, AL 36066, including outbuildings,
automobiles, and any computer(s) or computer media as further described in Attachments A and B,

| in the | Middle | District of | Alabama |
|---|---|---|---|

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment B

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
(1) evidence of a crime; (2) contraband, fruits of crime, or other items illegally possessed; or (3) property designed for use,
intended for use, or used in committing a crime;

concerning a violation of Title ___18___ United States code, Section(s) ___2251, 2252 and 2252A___

The facts to support a finding of probable cause are as follows:

See Attached Affidavit

Continued on the attached sheet and made a part hereof:     ☑ Yes     ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

12/4/2014 2/1430
Date

at   Montgomery                    Alabama
        City                          State

TERRY F. MOORER, U.S. MAGISTRATE JUDGE
Name of Judge                    Title of Judge

_____
Signature of Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

IN THE MATTER OF THE SEARCH OF        )
THE RESIDENCE AND CURTILAGE           )
LOCATED AT 1920 BRIARWOOD ST.         )      Case No. _2:14mj 202-TFM_
PRATTVILLE, AL 36066; INCLUDING       )
OUTBUILDINGS, AUTOMOBILES, AND        )
ANY COMPUTER(S) OR COMPUTER           )
MEDIA AS FURTHER DESCRIBED IN         )
ATTACHMENTS A AND B                   )

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Anthony B. Williams, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) with the U.S. Immigration and Customs Enforcement (ICE),

Homeland Security Investigations (HSI), within the United States Department of Homeland

Security. I have been a law enforcement officer for approximately fifteen (15) years: five (5)

years as a Federal Bureau of Investigation (FBI) Investigative Specialist, five (5) years as a

Federal Air Marshal and five (5) years as a Special Agent with HSI. In 2009, I began my career

as a Special Agent with ICE, which is now known as Homeland Security Investigations (HSI).

As an HSI Special Agent, I am authorized to investigate violations of United States laws, seek

and execute federal arrest and search warrants for Title 18, Title 19, and Title 21 criminal

offenses, including offenses related to child exploitation and child pornography material. I have

completed Special Agent Training at the Federal Law Enforcement Training Center. I currently

work in cooperation with the Alabama Bureau of Investigation (ABI), Internet Crimes Against

Children (ICAC) Task Force. During both basic training, and subsequent additional training, I have received instruction on conducting online child pornography and child exploitation investigations. I received basic cyber-crime training during my initial criminal investigative course held at the Federal Law Enforcement Center in Glynco, GA. I have received additional training through professional development courses during my career. Some classes related to cyber-crimes included an Online Undercover course, Cyber Investigations 101 and Social Media 101. I have been actively involved in at least eight (8) such investigations involving child exploitation.

2.      This affidavit is made in support of an application for a search warrant to search the entire residence, including all computers within, at 1920 Briarwood Street Prattville, Alabama 36066; residence of Jeremy MORGAN, more fully described in Attachment A. I have probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251, 2252 and 2252A, involving the use of a computer in or affecting interstate commerce to produce, transport, receive, distribute, possess and/or access child pornography is located in and within 1920 Briarwood Street, Prattville, Alabama 36066; residence of Jeremy MORGAN. Based upon the following information, and based on my training and experience, there is probable cause to believe the above identified premises currently contains evidence, fruits, and instrumentalities of production, possession, receipt and distribution of child pornography, as described in Attachment B.

3.      I am familiar with the information contained in this Affidavit based upon the investigation I have conducted and information provided to me by other law enforcement officers who have engaged in investigations involving the online coercion and enticement of minors and transmitting of obscene and/or pornographic images to minors over the Internet.

4.      Because this Affidavit is being submitted for the limited purpose of securing a search

warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251, 2252 and 2252A are located in or within 1920 Briarwood Street, Prattville, Alabama 36066.

## STATUTORY AUTHORITY

This investigation concerns alleged violations of Title 18, United States Code, §§ 2251, 2252, and 2252A, relating to material involving the sexual exploitation of minors:

a. 18 U.S.C. §2251(a) prohibits a person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or to have a minor assist any other person to engage in, or to transport any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for purpose of transmitting a live visual depiction of such conduct.

b. 18 U.S.C. § 2251(d)(1)(a) prohibits a person from knowingly making, printing, publishing, or causing to be made, printed, or published, any notice or advertisement seeking or offering to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

c. 18 U.S.C. § 2252 prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled

in interstate or foreign commerce.

d.  18 U.S.C. § 2252A prohibits a person from knowingly mailing, transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in 18 U.S.C. §2256(8), when such child pornography was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.

## DEFINITIONS

5.  The following definitions apply to this Affidavit and its Attachments:

a. The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

b. The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

c. The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

d. The term "computer," as defined in 18 U.S.C. §1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

e. The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether

made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where

>    i. the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

>    ii. such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

>    iii. such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

f. The term "child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but are not, in and of themselves, obscene and do not necessarily depict minors in sexually explicit poses or positions.

g. The terms "records," "documents," "information," and "materials," as used herein, include all information in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage.

h. "Internet Service Providers" (ISPs), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

i. "Internet Protocol address" (IP address), as used herein, is a code made up of numbers separated by dots that identifies a particular computer on the Internet. Every computer requires an IP address to connect to the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

j. "Domain names" are common, easy to remember names associated with an IP address. For example, a domain name of "www.usdoj.gov" refers to the IP address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period.

k. "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

l. The term "Twitter" refers to a real-time global information network that lets users create and share ideas and information instantly. People and organizations send 140-character messages through our website and mobile site, client applications (e.g., Twitter for Android; Twitter for iOS), SMS, or any variety of third-party applications. Most Twitter account information is public, so anyone can see it. A Twitter account profile contains a profile photo, header photo, background image, and status updates, called Tweets. In addition, the account holder has the option to fill out a location (e.g., San Francisco), a URL (e.g., twitter.com) and a short "bio" section about the account for display on their public profile.

m. The term "Sexually explicit conduct" means (i) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited; (ii) graphic or lascivious simulated; (I) bestiality; (II) masturbation; or (III) sadistic or masochistic abuse; or (iii) graphic or simulated lascivious exhibition of the genitals or pubic area of any person. *See* 18 U.S.C. § 2256 (2)(B).

## BACKGROUND ON COMPUTERS AND CHILD EXPLOITATION

6.     I have had both training and experience in the investigation of computer-related crimes. Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology, and the Internet have revolutionized the manner in which children are sought out, discovered and exploited.

7.      Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. It has also revolutionized the way in which child pornography collectors interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies.) The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths. The development of computers has added to the methods used by child pornography collectors to interact with and sexually exploit children. Computers basically serve four functions in connection with child exploitation: production, communication, distribution, and storage.

    a. Child pornographers can now transfer photographs from a camera onto a computer-
    readable format. With the advent of digital cameras, the images can now be transferred
    directly onto a computer. A device known as a modem allows any computer to connect
    to another computer through the use of telephone, cable, or wireless connection.
    Electronic contact can be made to literally millions of computers around the world. The
    ability to produce child pornography easily, reproduce it inexpensively, and market it
    anonymously (through electronic communications) has drastically changed the method
    of distribution and receipt of child pornography. Child pornography can be transferred
    via electronic mail or through file transfer protocols (FTP) to anyone with access to a

computer and modem.[1]  Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

8.      The computer's ability to store images in digital form makes the computer itself an ideal repository for child exploitation material, child pornography, and other obscene material.  The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.  These drives can store thousands of images at very high resolution.

9.      The Internet affords people with a sexual interest in children and collectors and distributors of pornography several different venues for obtaining, viewing, and trading child exploitation material and pornography in a relatively secure and anonymous fashion.

10.     People with a sexual interest in children and collectors and distributors of child pornography also use online resources to retrieve, store and share child exploitation material and pornography, including email and other services offered by Internet Portals such as Yahoo, Hotmail, Google, and Twitter, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

---

[1] The File Transfer Protocol (FTP) is a protocol that defines how to transfer files from one computer to another.  One example, known as "anonymous FTP," allows users who do not have a login name or password to access certain files from another computer, and copy those files to their own computer.

11.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer was used to possess, receive, or distribute child pornography, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information (e.g., the websites visited, files downloaded, or files deleted) is often maintained indefinitely or until overwritten by other data.

12.     Based on my training and experience, given the cheapness and size of modern storage devices, persons with an interest in children are more likely to keep data rather than delete it to make room.

13.     Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail. Searching computer systems and electronic storage devices may require a range of data analysis techniques. Criminals can mislabel or hide files and directories, encode communications, attempt to delete files to evade detection, or take other steps to frustrate law enforcement searches. In light of these difficulties, your affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B. Because of the technical expertise required to conduct a forensic analysis of computer hardware and software, or other electronic digital media and the time consuming

nature of a forensic computer examination, the examination of the computer hardware and software will need to be completed in a controlled environment at an offsite location.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

14.     On Wednesday, November 5, 2014, Special Agent Anthony B. Williams of the Department of Homeland Security, Homeland Security Investigations (HSI) received one Cyber Tip Report for the National Center for Missing and Exploited Children (NCMEC) regarding the possible transmission of child pornography through the Internet services of Twitter, Inc.

15.     According to the NCMEC Cyber Tip 2662468 received by Special Agent Anthony B. Williams, Twitter, Inc. discovered a subject posting illegal material to its Twitter followers. According to the cyber tip, Twitter reviewed the ninety-three (93) uploaded files and determined they contained several images of apparent child pornography on or about July 7, 2014, at 04:46 GMT. According to the NCMEC cyber tip, the reviewed files were not made publicly available and the Twitter account was closed due to the postings. All the files reviewed by Twitter contained the status identifications, the content of the tweet and a time stamp of the tweet. Twitter also, noted that there IP logs correlated with the user authentications to Twitter (i.e. sessions) and not to individual tweet postings. Therefore, the tweets in question likely occurred during one of the authenticated sessions noted in the IP logs Twitter provided. Twitter provided the Internet Protocol (IP) number that was utilized on July 7, 2014, at 04:46 GMT. When a registered Electronic Service Provider (ESP) voluntarily reports an IP address for the "user or person being reported" NCMEC Systems will geographically resolve the IP address via a publicly available on- line search. As a result of that search, the IP number 24.197.94.221 was determined to be assigned to Charter Communications. Twitter identified the screen name and email address associated with these transmissions. The screen name was "littlefettish69" and the

email address was johnhardcock420@gmail.com. Also in the additional information session of the report, the Twitter account user stated the following:

a. "male 26....We all want we what we cant have :) dont follow if yo u dont like young beautiful girls....WARNING IM INTO SOME KINKY SHIT FOLLOW AT YOUR OWN RISK!!!!"

16.     On August 18, 2014, a Subpoena was served for information pertaining to IP number 24.197.94.221, belonging to Charter Communications which provides service to subscribers for the purposes of connection to the Internet and its capabilities, such as the use of email programs.

17.     On August 22, 2014, information from Charter Communications was received indicating the subscriber for IP number 24.197.94.221 on July 7, 2014, at 04:46 GMT was Jeremy MORGAN of 1920 Briarwood Street, Prattville, AL 36066. According to Charter, the account was activated on March 8, 2014 and is current.

18.     On November 10, 2014, the ninety three (93) uploaded files believed to contain child pornography provided by Twitter was reviewed and was determined to consist of over nine hundred (900) images. Four images from the content of the ninety three (93) files can be described as follows:

> a: The file, entitled "Bskii7BCAA3uOu", is an image of two prepubescent white females licking on an adult white male's penis.
>
> b: The file, entitled "Bskj4ljCQAA-qbD", is an image of a prepubescent white female, lying on a bed naked holding both her legs in the air and spread apart, displaying her vaginal and anal areas.
>
> c: The file, entitled "BsPQVLLCYAMgRJW", is an image of a prepubescent white female holding and licking an adult white male's erect penis.

d: The file, entitled "BrbzCELCEAIyhEY", is an image of a prepubescent white female holding an adult white male penis while licking on one of his testes. The image also displayed the following website information: www.herr bra.tk

19. Information obtained from the aforementioned telecommunications services and queries of the information through various law enforcement and publicly accessible databases resulted in locating a Jeremy James MORGAN, W/M, Date of Birth 02/15/1988, SSN: \*\*\*-\*\*-1687 residing at 1920 Briarwood Street, Prattville, Alabama 36066. The queries also revealed a negative criminal history for MORGAN.

20. Agents went to the residence and took photographs for identifying purposes. While at the home, the agents attempted to see if they could locate a Wi-Fi signal from the street. The attempt met with negative results.

## CONCLUSION

21. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that certain items as described in Attachment B that constitute instrumentalities and evidence of violations of 18 U.S.C. §§ 2251, 2252, and 2252A, involving the use of a computer in interstate commerce to receive or poses or distribute child pornography is located in and within 1920 Briarwood Street, Prattville, Alabama36066; residence of Jeremy James MORGAN (See Attachment A).

22. This Court has jurisdiction to issue the requested warrant because it s "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), 2703(b)(10)(A) and 2703(c)(1)(A). Specifically, the Court is a district court of the United States in the Middle District of Alabama that has jurisdiction over the offense being investigated (18 U.S.C. § 2711(3)(A)(i)).

23.     Pursuant to 18 U.S.C § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

24.     Wherefore, your affiant respectfully requests that a search warrant be issued authorizing federal law enforcement officers, with appropriate assistance from other law enforcement officers, to enter the said described premises and therein search for and seize items as set forth above and in Attachment B to this affidavit and search warrant.

## REQUEST FOR SEALING

25.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Anthony B. Williams
Special Agent
Department of Homeland Security

Subscribed and sworn to before me on _December 4_____, 2014

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

The residence and curtilage located at 1920 Briarwood Street, Prattville, Alabama 36066, which is described as a two bed room apartment home located within the Highland Lakes apartment homes community. Apartment 1920 is located on the first level of Building 1 within the gated Highland Lakes community. The apartment is the first apartment on the right hand side as you approach Building 1 from the parking lot. The door to 1920 Briarwood Street is dark in color and has a Wreath with a multi-colored "M" on it. Behind the Wreath is the number "20" on the door.





## ATTACHMENT B
## DESCRIPTION OF PROPERTY TO BE SEIZED

1.      The following records, documents, and items that constitute evidence, contraband, fruits of crime, other items illegally possessed, and property designed for use, intended for use, or used in, violations of Title 18 U.S.C. §§ 2251(a), 2252 and 2252A, relating to material involving the production, receipt, possession, and distribution of child pornography, that is, sexually explicit images of minors, engaged in sexually explicit conduct, in any form wherever it may be stored or found including, but not limited to:

a.      Any computer, computer system, hard drives, including external hard drives, and related peripherals; electronic digital devices such as iPods, personal digital assistants; wireless communication devices such as cellular telephones, cellular telephone digital storage devices, commonly known as SD cards, commercial software and hardware, computer disks, disk drives, monitors, computer printers, scanners, modems, routers, tape drives, disk application programs, data disks, system disk operating systems, magnetic media, floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, firewalls, switches, hubs, wireless access points, gaming consoles, web cameras, digital cameras, uninterrupted power supplies, hardware device power supplies, tape backup drives, digital video recorders, undeveloped photographic film, slides and other visual depictions of such Graphic Interchange formats (including, but not limited to JPG, GIF, TIF, AVI and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to computer passwords and data security devices and computer-related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child

pornography; and /or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, as defined by 18 U.S. C. § 2256(8)(A); as well as any visual depictions of child erotica;

b. Books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S. C. § 2256(8)(A), and any child erotica and obscene visual representations of the sexual abuse of children;

c. Originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(8)(A), and any child erotica and obscene visual representations of the sexual abuse of children;

d. Motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S. C. § 2256(8)(A), and any child erotica and obscene visual representations of the sexual abuse of children;

2. Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(8)(A), that were transmitted or received using a computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

a. Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(8)(A);

b.    Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(8)(A);

c.    Any and all records, documents, or materials, including any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States mail or by computer, any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, § 2256(8)(A);

d.    Any and all records, documents, or materials, including any and all address books, names, and lists of names and addresses of minors visually depicted while engaging in sexually explicit conduct, defined in Title 18, United States Code, § 2256(8)(A);

e.    Any and all records of Internet usage including user names and e-mail addresses and identities assumed for the purposes of communication on the Internet. These records may include ISP records, i.e., billing and subscriber records, chat room logs, e-mail messages, and include electronic files in a computer and on other data storage mediums, including CDs or DVDs;

f.    Any and all records of cellular telephone usage including user names contacts. PIN codes and PIN unlock codes, call logs, call history, voice-mails, and e-mail addresses, text or chats and identities assumed for the purposes of communication on the Internet or through cellular network. These records may include cellular records, i.e., billing and

subscriber records, chat room logs, e-mail messages, and include electronic files in a computer and on other data storage mediums, including CDs or DVDs;

3. Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence.

4. Records or other items which evidence ownership or use of computer equipment and internet service, found in the above residence, including, but not limited to, sales receipts, bills for internet access, and handwritten notes.

5. For any computer hard drive or other electronic media found to contain information otherwise called for by this warrant:

    a. Evidence of who used, owned, or controlled the computer at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

    b. Evidence of software that would allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software;

    c. Evidence of the lack of such malicious software;

    d. Evidence of the attachment to the computer of other storage devices, disks, CD-ROMs, or similar containers for electronic evidence;

    e. Evidence of the times the computer was used;

6. Passwords, encryption keys, and other access devices that may be necessary to access the computer and/or cellular telephone devices; Contextual information necessary to understand the evidence in this attachment; Documentation and manuals that may be necessary to access or conduct an examination of the computer.

7.     Any exculpatory or impeachment evidence.

In the execution of this warrant, the agents may seize all computers and computer-related media to be searched later by a qualified examiner in a laboratory or other controlled environment.